**PRUDENTIAL INS Co v ROHBAUCH**

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 3, 1930

Kennedy, Manchester, Ford, Bennett & Powers, Youngstown, for Ins Co.

Wm. E. Pfau, Youngstown, for Rohrbaugh.

POLLOCK, J.

It is urged that these answers were not true, that she was not in good health at this time and that she was suffering from these two diseases. She died on the 2nd of November of that year, and from these troubles. It may be said that while this woman had been suffering or in poor health, the husband testifies, and that is all that we have in this case, that they thought that the time of life of this lady was causing her trouble. She was forty five years of age at that time, and that that accounts for these answers. A further question was asked of her:

"Q On what dates and for what complaints has the insured been at-tended by physicians during the past three years?"

She says "None", which was, from the evidence in the case, not true. She had been attended within the last few years by at least two physicians, and it is urged that the answers to these questions were all false. Whatever the common law may have been, or whatever the rules elsewhere may be, in this state we have a statute provision which is binding upon both the insured and the insurer and can not be evaded by any contracts that they may make, or provisions in the contract. It is GC 9391:

"No answer to any interrogatory made by an applicant in his or her application for a policy shall bar the right to recover upon a policy issued thereon, or be used in evidence upon a trial to recover upon such policy, unless it be clearly proved that such answer is wilfully false, was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued, and also that the agent or company had no knowledge of the falsity or fraud of such answer."

So that it is not sufficient for the insurer to prove alone that these answers were false, but he must clearly prove that such answers are wilfully false, fraudulently made and material and induced the company to issue the policy. Now, has it been proven to such an extent that this court should interfere with this verdict that these answers, even though they were false, were wilfully false and fraudulently made? As we have said, the first of them, while this woman had evidently not been feeling well within a few months prior to taking out this policy, yet if she thought her condition was the result of what her husband testified to, she might answer these questions and not intentionally be fraudulent, and possibly would not have voided the policy if they had known.

We come then to the last question, that she must have known that she had been attended by these physicians. The agent of the company was accompanied to this home by one Razzo, who was acquainted with the parties, and he was there at the time, and the husband was also present. The agent testified that at the time he wrote this first policy that he asked the insured all of these questions and she answered them. The daughter testified that she and her mother looked over them at

the time, or prior to it, but there is testimony here contradicting Mr. Burns by the husband, daughter and this person who was present, that the questions were all asked the insured. At the time the last application was secured the agent himself was in doubt whether he asked all of them or not, and gives as the reason that he had prior thereto examined this woman on the $700 policy, and sometimes they did not ask the questions, but·anyway it was a question' for the jury, and the jury not only returned a general verdict but they were asked certain interrogatories and answered them:

"1. Did Mrs. Rohrbaugh at the time the company's agent, Mr. Brown, filled out the application, truthfully answer all questions which Mr. Brown propounded to her? A Yes.

2. Did Mrs. Rohrbaugh up to the time of the delivery of the policy, and at all other times, give to the company truthfully all information requested of her by the company's agent, Mr. Burns? A Yes."

Now, they had this very question propounded to them, whether she truthfully answered all the questions they asked and truly gave them all the information they asked for. If this testimony of the defendant is correct, and the jury were there to determine what was done at this meeting, we can not say that she was even asked this question, so that we think under the rule and principle announced by the legislature in this section, we can not say that this verdict is manifestly against the weight of the evidence on the ground that these answers were wilfully false; in other words, that this insured wilfully made these false statements and that they were fraudulently made by her.

Then we come to the next question to be determined and that is whether after this application for the $300 policy was secured by the agent, such acts and things were done by the company that there was a contract of insurance existing between the insured and insurer at the time of this woman's death. This application seems to have been made on the 24th of September that year, and it had a provision in regard to when the policy took effect if the premium was paid at the time the application was made:

"It is understood and agreed, however, that if at the time of signing this application the full first premium is paid, the insurance shall take effect from the date of this application in accordance with the provisions of the policy hereby applied for, provided life proposed is in sound health on the date of this application and provided this application was approved and accepted at the home office of the company in Newark, N. J. under the plan for the premium paid on amount of insurance applied for."

In other words, the insured on the date she signed this application was insured from that time on, subject to the approval of the insurance company at its home office in New Jersey. It appears from the evidence that this application was forwarded to the home office and·returned, rejected on the ground that there had been a mistake in the premium paid, that the amount of premium paid was not sufficient to authorize the issuing of such policy, and that was the only objection made at that time to the policy. The agent went back to the insured and explained the policy and she paid the additional premium. The application was then taken back and forwarded to the home office and returned again to the agent, on the ground that this character of a policy would not be written for $300.00, that the minimum amount was $500.00. On the 20th of October the agent again appeared at the home of the insured and learned that she was· sick in bed, returned without making his mission' known at least to the insured, and did not return again until after her death on the 2nd of November. Now, under those conditions, is there a policy existing, or rather was the deceased's life insured on the 2nd of November, under this application, by the insurance company? The insurance company never had in terms accepted this policy, and if it can be held she was insured it must be by the conduct of the insurer. This application took effect when she paid the insurance premium. At that time there was an obligation between the deceased and this insurance company, insuring her life for the amount of $300, only to be defeated if the insurance company did not accept this policy. As we have said, they refused to accept it on one ground, and that was that the premium paid was not sufficient. The insured being notified' of that fact, she did what was then required of her to make an insurance policy exist between these two parties. So far as that proposition is concerned, they never did notify the insured that it had cancelled.

We feel that when the company rejected the application on the one ground, and for no other reason, and insured complied with that condition, that it made a policy of insurance existing between these parties from that time on until the company would notify her that they rejected the policy again on some other ground, and the company never did, and for that reason we think the judgment on this $300.00 application should also be affirmed, and the judgment of the court below is affirmed.

Roberts and Farr, JJ, concur.